NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

JEREMY PHILLIP BREDVIG, *Petitioner/Appellant*,

*v.*

HEATHER ANN MASON, *Respondent/Appellee*.

REUBEN RODRIGUEZ, *Petitioner/Appellee*.

No. 1 CA-CV 22-0159 FC
FILED 12-29-2022

Appeal from the Superior Court in Maricopa County
No. FC2018-096499
No. FC2021-090912
The Honorable Marvin L. Davis, Judge

**AFFIRMED**

COUNSEL

Gillespie Shields Goldfarb & Taylor, Mesa
By Mark A. Shields, Robert Newell
*Counsel for Petitioner/Appellant*

Adam C. Rieth PLLC, Mesa
By Adam Rieth
*Counsel for Respondent/Appellee*

------

**MEMORANDUM DECISION**

------

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Michael J. Brown and Judge James B. Morse Jr. joined.

------

**P E R K I N S**, Judge:

¶1   Until 2021, Jeremy Phillip Bredvig and Heather Ann Mason ("Mother") shared joint legal decision-making and parenting time for their three children under a 2019 consent judgment and paternity order ("2019 Judgment"). This appeal concerns the provisions of the judgment relating to the oldest child ("Child"). In response to Bredvig's petition to modify parenting time, Mother challenged Bredvig's paternity. Reuben Rodriguez separately filed a paternity action and a genetic test showing that he is Child's biological father. After consolidating proceedings on Bredvig's petition to modify parenting time and Rodriguez's paternity petition, the superior court set aside the provisions of the 2019 Judgment relating to Child; Bredvig appeals this order. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2   Mother was not married when Child was born in 2009. In 2011, Bredvig and Mother signed a voluntary acknowledgment of paternity issued by the Arizona Department of Economic Security ("ADES") and witnessed by an ADES employee. Two days later, the Arizona Department of Health Services issued a birth certificate listing Bredvig as Child's father.

¶3   In 2018, after Mother and Bredvig had split, Bredvig petitioned for joint legal decision-making authority and parenting time for all three children. Mother and Bredvig submitted the 2019 Judgment, naming Bredvig and Mother as the natural parents of all three children. The judgment awarded Bredvig and Mother joint legal decision-making authority and parenting time for the children.

¶4   In 2020, Bredvig petitioned to modify the parenting-time order. In response, Mother sought sole custody and legal decision-making. She also requested that Bredvig take a paternity test for all three children; she wanted Bredvig removed from the birth certificates of any children who were not biologically his. Mother alleged the parties could no longer co-

parent due to increased animosity and Bredvig not acting in Child's best interests.

**¶5**　　　　While these cross-petitions were pending, Reuben Rodriguez petitioned for a paternity order, alleging he was Child's biological father according to a genetic test. Rodriguez sought joint legal decision-making authority and parenting time for Child. Rodriguez informed the court that he previously filed a paternity action in 2010 but it was dismissed when he could not personally serve Mother.

**¶6**　　　　On Mother's motion, the superior court consolidated the two actions and ordered all three parties to brief the issues relating to the competing paternity claims and requests to set aside the 2019 Judgment. Before the consolidation order, Mother and Rodriguez agreed to joint legal decision-making, a parenting plan, and child support for Child. The day after the consolidation order, a different superior court judge signed a consent judgment in Rodriguez's paternity action ("2021 Judgment"). The 2021 Judgment declared that Rodriguez was Child's natural father and ordered the Office of Vital Records to amend the birth certificate. It also awarded Rodriguez joint legal decision-making authority and reasonable parenting time.

**¶7**　　　　The superior court held an evidentiary hearing in the consolidated action in December 2021. Rodriguez, Bredvig, and Mother all testified. The court set aside the provisions in the 2019 Judgment relating to Child based on Mother's fraud upon the court. Bredvig appeals the order setting aside the 2019 Judgment as to Child. It is not clear that the superior court properly certified its decision as final and appealable. Given the need for an expeditious decision on the paternity issue, we accept special action jurisdiction. *Antonsen v. Superior Ct. In & For Cnty. of Maricopa*, 186 Ariz. 1, 4 (App. 1996) ("cases involving potential custody of young children are also often appropriate for special action relief to achieve a speedy resolution").

**DISCUSSION**

**I.　　Order setting aside the 2019 Judgment**

**¶8**　　　　Mother and Rodriguez sought to set aside the 2019 Judgment, which named Bredvig as Child's natural father. They argued the judgment was a result of a fraud upon the court because Mother and Bredvig knew that Rodriguez was Child's father at the time of filing. Bredvig denied this, claiming he believed himself to be Child's father until Rodriguez filed his paternity action in 2021. Based on the evidence and testimony presented,

the superior court found that Mother committed a fraud upon the court but made no findings regarding Bredvig's involvement.

### A.     Motion to set aside

**¶9**     Mother did not file a Rule 85 motion to set aside the 2019 Judgment. Bredvig argued that the claims asserted by Mother and Rodriguez were untimely under A.R.S. § 25-812 (action to overcome paternity) and Rule 85(c) of Family Law Procedure (relief from judgment) in his objection to Mother's consolidation motion and in his first pretrial statement. From this point on, the court and parties treated Mother's and Rodriguez's pleadings as Rule 85 motions to set aside. The court's order, entitled "Paternity/Motion to Set Aside" specifically addressed "the issue of paternity and the request to set aside the 2019 Consent Judgment." We review the superior court's ruling on a Rule 85(c) motion for an abuse of discretion. *See Clark v. Kreamer*, 243 Ariz. 272, 275, ¶ 10 (App. 2017). A court abuses its discretion when it makes an error of law, fails to consider the evidence, or if the record fails to provide substantial evidence to support its ruling. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455–56 (1982).

### B.     Fraud upon the court

**¶10**     Because Mother and Rodriguez sought to set aside the paternity order in the 2019 Judgment over a year after it was entered, they had to prove fraud upon the court by clear and convincing evidence. Ariz. R. Fam. Law. P. 85(c)(1), (d)(3); *Clark*, 243 Ariz. at 275, ¶ 13. The superior court found that "Mother committed an intentional act for the deliberate purpose of misleading the Court" and it was thus "necessary to set aside the Consent Judgment to rectify the fraud."

**¶11**     On appeal, Bredvig argues the superior court erred in setting aside the 2019 Judgment because: (1) no one argued fraud on the court as grounds to set aside the judgment; (2) the evidence does not support the finding of a fraud on the court; and (3) Mother cannot rely on her own fraud to set aside the paternity finding in the 2019 Judgment.

**¶12**     First, although neither Mother nor Rodriguez filed a separate motion to set aside the portion of the consent judgment declaring Bredvig's paternity, the parties raised the alleged fraud upon the court as grounds to set aside the 2019 Judgment in multiple pleadings. And Bredvig responded to these arguments. We therefore conclude that the issue was properly raised and is not subject to waiver.

¶13        Second, ample evidence supports the court's finding that Mother committed a fraud upon the court. Mother testified she knew for certain that Rodriguez—not Bredvig—was Child's father based on an amniocentesis test conducted during her pregnancy. Mother also testified that Bredvig knew about these results before Child's birth. Mother claimed she listed Bredvig as the father because he threatened to leave her if she failed to do so. And Rodriguez testified he knew he was the father before Child was born, as evidenced by his 2010 paternity action. The court found that this evidence sufficiently showed a fraud occurred at the time of the 2019 Judgment.

¶14        Despite Mother's repeated admissions of fraud, Bredvig argues these facts do not rise to the level of fraud upon the court. Fraud upon the court occurs "[w]hen a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court." *Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 299, ¶ 42 (App. 2011). The superior court found that, based on the evidence and testimony, "Mother committed an intentional act for the deliberate purpose of misleading the Court." Mother's intentional fraud prevented Rodriguez from establishing a legally valid relationship with Child. As such, it "damaged the 'integrity of the judicial process' and 'is a wrong against the institutions set up to protect and safeguard the public.'" *McNeil v. Hoskyns*, 236 Ariz. 173, 177, ¶ 16 (App. 2014) (citation omitted). The record supports the finding that Mother committed a fraud upon the court. We find no error in the court's ruling.

¶15        Finally, Bredvig argues that setting aside the 2019 Judgment was error because Mother cannot benefit from her wrongdoing. He reasons that the court found no fraud on his part, and that setting aside the 2019 Judgment ultimately benefitted Mother and penalized him. On appeal, Mother continues to argue that Bredvig was complicit in the fraud because he knew he was not Child's father, pressured her to sign the voluntary acknowledgement, and assisted Mother in avoiding Rodriguez. The record thus contains conflicting testimony regarding the fraud in this case. The superior court did not address this factual dispute and we need not resolve it.

¶16        Bredvig is correct that Mother cannot obtain relief with unclean hands. *See McQuillen v. Hufford*, 249 Ariz. 69, 74, ¶ 17 (App. 2020) (precluding mother from seeking relief based on her own fraudulent misrepresentations); *In re Marriage of Worcester*, 192 Ariz. 24, 26, ¶ 6 (1998) ("[I]t is axiomatic that one who knowingly and intentionally perpetrated a fraud on another party and the court can never be entitled to relief under

[Rule 60(b)]," the civil counterpart to Rule 85(b)). But Rodriguez separately filed to establish his parental rights as to Child, and his paternity action was consolidated. "[A]n innocent party may seek relief from a judgment procured by the fraud of others." *McQuillen*, 249 Ariz. at 74, ¶ 17. Rodriguez is the innocent party entitled to challenge the 2019 Judgment based on Mother's fraud upon the court. The superior court properly considered Rodriguez's requests to set aside the judgment.

**¶17** As stated in ¶ 14, *supra*, the record evidence supports the court's finding that Mother committed a fraud upon the court. Whether Bredvig participated in Mother's fraud does not undercut the court's decision to set aside the 2019 Judgment. "The superior court may set aside a judgment at any time when the moving party proves the judgment was the product of fraud upon the court." *Clark*, 243 Ariz. at 275, ¶ 13 (citation omitted); *see also Alvarado v. Thompson*, 240 Ariz. 12, 17, ¶ 23 (App. 2016) (holding the court "did not err by concluding that intentionally creating and using a fraudulent acknowledgment of paternity under the circumstances . . . was a fraud upon the court."). Because the superior court properly found Mother committed fraud upon the court and Rodriguez is the innocent third-party seeking relief from judgment procured by Mother's fraud, it did not abuse its discretion in setting aside the judgment.

## II. Best-interests findings

**¶18** Bredvig argues the superior court needed to consider and make findings regarding Child's best interests before setting aside the paternity order in the 2019 Judgment. Mother contends the court did not have to analyze Child's best interests before it ordered a paternity test.

**¶19** The paternity test identifying Child's biological father—Rodriguez—had already been performed, so the issue, as Bredvig more accurately frames it, is whether the court must hold a best-interests hearing when setting aside a paternity order. Whether the court must consider the child's best interests before setting aside a paternity judgment is a question of law we review *de novo*. *See Clark*, 243 Ariz. at 275, ¶ 10.

**¶20** Rule 85 does not require a best-interests analysis in deciding whether to set aside a judgment that is the result of fraud upon the court: "This rule [Relief from Judgment] does not limit the court's power to . . . set aside a judgment for fraud on the court." Ariz. R. Fam. Law P. 85(d)(3). When a party obtains a judgment through a fraud on the court, "the court has the power to set aside the judgment at any time." *Cypress on Sunland*

*Homeowners Ass'n*, 227 Ariz. at 299, ¶ 42. We hold that the court did not have to make a best-interests finding before setting aside the judgment.

**¶21**         After paternity is established, the best-interests analysis becomes relevant to address custody and visitation issues. *See Stephenson v. Nastro*, 192 Ariz. 475, 481, ¶ 17 (App. 1998); *see also Antonsen*, 186 Ariz. at 7 ("'[T]he determination of the best interests of the child must be made separately, after the resolution of biological paternity,' when the mother contests the presumptive father's paternity, and when the tests confirm the presumptive father is not biologically related to the child.") (citation omitted). Rule 85 requires no such analysis to set aside a judgment after finding that a party committed a fraud upon the court. *See* Ariz. R. Fam. Law P. 85(d)(3).

### III.    Guardian ad litem appointment

**¶22**         Bredvig argues the superior court erred by failing to appoint a guardian ad litem to represent Child's best interests.  "On the motion of any party or on its own motion, the court shall appoint a guardian ad litem if it determines that there are reasonable grounds to believe that a party to the proceeding is mentally incompetent or is otherwise in need of a guardian ad litem." A.R.S. § 8-535(F). We review the court's failure to sua sponte appoint a guardian ad litem for an abuse of discretion. *Kelly R. v. Ariz. Dep't of Econ. Sec.*, 213 Ariz. 17, 21 n. 6 (App. 2006).

**¶23**         At no point throughout the course of trial did any party request a guardian ad litem; Bredvig raises the issue for the first time on appeal. The record otherwise contains no evidence of reasonable grounds to believe that any one of the parties was mentally incompetent. The superior court did not abuse its discretion.

### ATTORNEYS' FEES AND COSTS ON APPEAL

**¶24**         Both parties request attorneys' fees under A.R.S. § 25-324. Neither party took unreasonable positions on appeal. And the record contains no current information about the parties' financial resources. For these reasons, we deny their requests. As the successful party on appeal, Mother is entitled to her costs under A.R.S. § 12-342 upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶25 We affirm the superior court's order setting aside the provisions of the 2019 Judgment relating to Child.

